UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DOROTHY EASTERLY,                         ) | |
| ) | |
| Plaintiff,                         ) | |
| ) | |
| vs.                         ) | Cause No. 1:08-cv-1714-WTL-TAB |
| ) | |
| HERITAGE CHRISTIAN SCHOOLS,    ) | |
| INC.,                         ) | |
| ) | |
| Defendant.                         | |

### ENTRY ON MOTION TO COMPEL ARBITRATION AND STAY

This cause is before the Court on the Motion to Compel Arbitration and Stay filed by Defendant Heritage Christian Schools, Inc. ("Heritage") and a related motion to strike filed by Plaintiff Dorothy Easterly. The motions are fully briefed, and the Court, being duly advised, **GRANTS** Heritage's motion and **DENIES AS MOOT** Easterly's motion for the reasons set forth below.

The facts as alleged by Easterly in her complaint are as follow. Heritage is a private Christian school for students in grades kindergarten through high school. Easterly was employed by Heritage for approximately twenty years, beginning as a high school English teacher in 1987. Starting in 2004, in addition to teaching, Easterly served as Director of Curriculum and Director of Distance Learning. She also was responsible for producing the school's yearbook.

Easterly's employment was governed by a series of contracts, the last of which

was accepted by Easterly on May 1, 2007. In July 2007, Heritage revoked Easterly's contract and constructively discharged her by offering her a position with a substantially lower salary. Easterly alleges that in so doing, Heritage not only breached the contract, but also discriminated against her on the basis of her age and disability in violation of the ADEA and the ADA.

The last few contracts between Easterly and Heritage, including the one at issue in this case, contained the following provision:

> I agree to resolve differences with others (parents, fellow-workers, Administration) by following the biblical pattern of Matthew 18:15-17. Should the teacher have unresolved issues with the employer after utilizing the Matthew 18 principle, I and the employer agree to be bound by the following mediation and binding arbitration agreement in an attempt to resolve issues and bring reconciliation:
>
> MEDIATION AND BINDING ARBITRATION AGREEMENT
>
> The parties to this agreement are Christians and believe that the Bible commands them to make every effort to live at peace and to resolve disputes with each other in private or within the Christian community in conformity with the biblical injunctions of 1 Corinthians 6:1-8, Matthew 5:23-24, and Matthew 18:15-20.
>
> Therefore, the parties agree that any claim or dispute arising out of, or related to, this agreement or to any aspect of the employment relationship, including claims under federal, state, and local statutory or common law, the law of contract, and the law of tort shall be settled by biblically based mediation.
>
> If resolution of the dispute and reconciliation do not result from mediation, the matter shall then be submitted to an independent and objective arbitrator for binding arbitration. The parties agree for the mediation and arbitration process to be conducted in accordance with the "Rules of Procedure for Christian Conciliation" ("Rules") contained in the Peacemaker Ministries booklet, Guidelines for Christian Conciliation. Consistent with these

> "Rules," each party to the agreement shall agree to the selection of the arbitrator. The parties agree that if there is an impasse in the selection of the arbitrator, the Institute for Christian Conciliation division of Peacemaker Ministries of Billings, Montana [(800) 711-7118], shall be asked to provide the name of a qualified person who will serve in that capacity. Consistent with the "Rules," the arbitrator shall issue a written opinion within a reasonable time.
>
> The parties to this contract agree that these methods shall be the sole remedy for any controversy or claim arising out of the employment relationship or this agreement and expressly waive their right to file a lawsuit against one another in any civil court for such disputes, except to enforce a legally binding arbitration decision. The parties to this agreement have had an opportunity to consult legal counsel before signing this agreement.

In the instant motion, Heritage seeks to enforce that provision and stay this case while the parties pursue arbitration.

The Federal Arbitration Act ("FAA") provides:

> A written provision in any . . .contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA," *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001)), and provisions of otherwise enforceable employment contracts that require arbitration of federal discrimination claims are equally enforceable. *See Oblix, Inc. v. Winiecki*, 374 F.3d 488, 491 (7th Cir. 2004) (citing *Circuit City* and *Gilmer v. Interstate/Johnson Lane Corp.* 500 U.S. 20 (1991)). Easterly recognizes these general principles, but argues that

the arbitration provision in her employment contract is nonetheless unenforceable for several reasons.

First, Easterly argues that the arbitration provision is unenforceable because its terms are vague and ambiguous. Specifically, Easterly points to the fact that the contract provides that the Rules of Procedure for Christian Conciliation ("RPCC") are to govern the arbitration process, but those rules are not attached to the contract and no details about the rules are provided in the contract. Easterly then argues "it is unequivocal that Ms. Easterly could not have fully understood the terms of the mediation and arbitration agreement she was entering into when it was devoid of any details concerning the alternative dispute resolution forums and procedures – it was unconscionable." Easterly Response at 5.[1] Easterly likens her situation to that in *Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753 (7th Cir. 2001), in which the court found an arbitration agreement unenforceable in part because it contained "only an unascertainable, illusory promise" on the part of the arbitration company with which the plaintiff had contracted. In that case, however, the arbitration company was obligated only to "provide an

---

[1]Easterly also remarks: "Employees entering into agreements related to their employment are naturally at an unfair advantage – e.g., in most instances, employees are required to sign one-sided arbitration agreements (like the one in this case) as a condition precedent to obtaining employment with the employer or as part of the employment process. If an employee does not sign the agreement, it is most probably [sic.] that she will not get the job." Easterly Response at 5. To the extent that Easterly suggests that the typical unequal bargaining power between employees and employers is a reason to find an arbitration clause unenforceable, this argument has been rejected by the Supreme Court. *See Gilmer*, 500 U.S. at 33 ("Mere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context.").

arbitration forum, Rules and Procedures, and a hearing and decision based on any claim or dispute" raised by the employee; it had the sole, unilateral discretion to modify or amend its rules at any time and therefore could, as the court remarked, "fulfill its promise by providing [the plaintiff and his employer] with a coin toss." *Id.* at 759.

This case is readily distinguishable from *Penn*. While the RPCC were not attached to the contract, they were available from Heritage and are readily available on the internet, and there is no indication that Easterly could not have obtained them with minimal effort if she had been so inclined. Unlike the situation in *Penn,* where one of the parties to the arbitration agreement maintained the right to essentially make up the rules as it went along, the RPCC have been promulgated by an uninvolved third party, much like the rules established by the American Arbitration Association. "[U]nder the FAA the parties are free to agree to any governing rules, and the courts will enforce whatever system they choose." *Webster v. A.T. Kearney, Inc.*, 507 F.3d 568, 573 (7th Cir. 2007) (citing *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford*, 489 U.S. 468, 476 (1989) ("There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate.")). Easterly has pointed to nothing that supports her assertion that the arbitration clause is unconscionably vague.

Easterly next argues that "the arbitration provision in the parties' contract provides for a process by which Ms. Easterly must forego vindication of her substantive rights guaranteed by the ADEA and ADA and Indiana contract law, and instead rely on biblical scripture to define her rights." Easterly Response at 6. Easterly points to the fact that the RPCC provide that

"Conciliators shall take into consideration any state, federal, or local laws that the parties bring to their attention, but the Holy Scriptures (the Bible) shall be the supreme authority governing every aspect of the conciliation process."  While it is true that "a substantive waiver of federally protected civil rights will not be upheld," *14 Penn Plaza LLC v. Pyett*, 129 S.Ct. 1456, 1474 (2009) (citations omitted), Easterly does not explain how this provision constitutes a waiver of her rights under the ADA and the ADEA.  The provision requires the arbitrator to take into consideration the applicable law,[2] and Easterly fails to articulate how biblical principles might conflict with that law to her detriment.[3]  In the absence of such a showing, the Court declines to find that submission to arbitration under the RPCC will deprive Easterly of her right to vindicate her statutory rights.

Easterly also argues that "[t]he agreement to biblically-based arbitration in Ms. Easterly's teaching contract cannot be enforced because the processes are structurally biased and

---

[2]To the extent that Easterly takes issue with the fact that the conciliator is only required to consider law that the parties bring to his or her attention, the Court notes that the same is essentially true of a federal judge, in light of the fact that a party can waive an argument–e.g. that a particular case or statute applies–by failing to raise it.

[3]If it turns out that the arbitrator determines that they do, Easterly's remedy lies in this Court.  An arbitrator's decision is subject to being overturned by a reviewing court for "manifest disregard" of the law, and  "where a governing legal principle is well defined, explicit, and clearly applicable to the case, and where the arbitrator ignored it after it was brought to the arbitrator's attention in a way that assures that the arbitrator knew its controlling nature, his disregard of it is 'manifest.'" *Jonites v. Exelon Corp.*, 522 F.3d 721, 726 (7th Cir. 2008) (citation and internal quotation marks omitted).  Easterly's citation to *Jones v. Wolf*, 443 U.S. 595 (1979), and other cases for the proposition that this Court's review of a Christian arbitrator's decision is somehow limited by the First Amendment are misplaced.  The arbitrator's decision will not be the decision of a "religious tribunal" regarding a religious matter; instead, it will be the resolution of a legal claim that will be subject to judicial review the same as if it had been conducted pursuant to the American Arbitration Association's procedural rules or any other set of secular procedures.

procedurally inadequate." Easterly Response at 9. However, Easterly again fails to articulate how this is so. "The Supreme Court has repeatedly counseled that the FAA leaves no room for judicial hostility to arbitration proceedings and that courts should not presume, absent concrete proof to the contrary, that arbitration systems will be unfair or biased." *Penn*, 269 F.3d at 758 (citing *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79 (2000) and *Gilmer*, 500 U.S. at 30). She further objects to the fact that the RPCC differ from the Indiana Alternative Dispute Resolution Rules with regard to confidentiality. However, again, "under the FAA the parties are free to agree to any governing rules, and the courts will enforce whatever system they choose."

Finally, Easterly argues that the arbitration agreement effectively precludes her ability to enforce her rights under the ADA and the ADEA because under the RPCC she may be required to pay half of the fees and costs of arbitration. "It may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." *Randolph*, 531 U.S. at 90. However, to invalidate an arbitration agreement based upon the risk that a party "will be saddled with prohibitive costs . . . would undermine the liberal federal policy favoring arbitration agreements." *Id.* at 91. That is precisely what Easterly asks the Court to do in this case. While the Rules provide that the fees and costs of arbitration are to be shared equally by the parties unless otherwise agreed or determined otherwise by the arbitrator, the Rules further provide for the reduction or fees or arrangement of a payment plan based upon the financial situation of the participants. In addition, the arbitrator has the power to award fees and costs to a participant. Given these provisions, it is impossible to

do more than speculate at this point regarding the ultimate cost of arbitration to Easterly. Indeed, it is for the arbitrator, not this Court, to determine in the first instance how to apply these provisions in light of the requirements and purposes of the ADA and ADEA. *Cf. Carbajal v. H & R Block Tax Services, Inc.*, 372 F.3d 903, 906-07 (7th Cir. 2004) ("Whether any particular federal statute overrides the parties' autonomy and makes a given entitlement non-waivable is a question for the arbitrator.").

The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements," and "that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Duthie v. Matria Healthcare, Inc.*, 540 F.3d 533, 536-37 (7th Cir. 2008) (citations and internal quotation marks omitted). Easterly has pointed to nothing about the arbitration agreement in this case that would override this policy. Accordingly, Heritage's motion to compel arbitration and stay this case is **GRANTED**. Because it was not necessary for the Court to consider the affidavit at issue in Easterly's motion to strike in making its ruling, the motion to strike is **DENIED AS MOOT**. This case is hereby **ADMINISTRATIVELY CLOSED**. Either party may move to reopen this case to seek judicial review of the arbitrator's decision **within 30 days of the final arbitration decision**.

SO ORDERED:   08/26/2009

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification